UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PROVIDENCE ZUMBO, as Administratrix of the
Estate of JOHN ZUMBO a/k/a JOHN D. ZUMBO,   CIV. NO. 07 CV 6340 (LMM)

                                    Plaintiff,
    -against-

T. AND B. EQUIPMENT COMPANY, INC.,
ALLEN GEORGE ROTHENBERGER,

                                    Defendants.
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* FOR A DETERMINATION THAT THE CONNECTICUT "WRONGFUL DEATH" STATUTE GOVERNS THE ISSUE OF DAMAGES**

      Plaintiff, Providence Zumbo as Administratix of the Estate of John Zumbo *a/k/a* John D. Zumbo ("Plaintiff" or "Zumbo"), respectfully submits this memorandum of law in support of her motion *in limine* for a ruling that under New York choice-of-law rules, Connecticut has substantial interests in applying its wrongful death statute in this matter, and thus, the law of Connecticut, as the domicile of the decedent as well as the state in which Letters of Administration for the decedent's estate have been issued to Plaintiff, governs the issue of damages herein, thus permitting Plaintiff to introduce evidence of (i) the destruction of the decedent's earning capacity; (ii) the value of decedent's lost enjoyment of life; and (iii) the decedent's conscious pain and suffering.

**PRELIMINARY STATEMENT**

      Plaintiff is requesting this Court, after applying New York choice-of-law analysis, to determine that the law of Connecticut governs the issues of damages herein.

Connecticut has the greatest interest in enforcing its wrongful death statute in this action because:

    i.    New York, as the locus of the accident, has no interest in the allocation of loss in this case since none of the parties are domiciled in the State;

    ii.    Connecticut was the domicile of the decedent at the time of his death and the jurisdiction in which Letters of Administration for the decedent's estate have been issued as well as the domicile of the decedent's parents who will be the primary beneficiaries of any damages awarded herein;

    iii.    Connecticut law compensates decedents for injuries sustained from wrongful death and thus, Connecticut, as the state most closely aligned with the disposition of the decedent's estate, has a significant interest in how its citizens will be compensated;

    iv.    Connecticut, as the domicile of the decedent and his parents, is where the decedent's loss is most keenly felt and where the burden of the victims' uncompensated needs may fall;

    v.    Virginia, which is the domicile of the Defendants, has no appreciable interest in securing recovery for the losses of the citizens of Connecticut;

    vi.    Application of the Virginia wrongful death statute, which is predicated on losses incurred by the decedent's family (statutory beneficiaries), would completely displace the right of the decedent's estate, under Connecticut law, to recover for injuries sustained by the decedent from the accident, including death, thereby undermining and frustrating the primary objectives of the Connecticut statute;

    vii.    Application of the Connecticut statute will not wholly frustrate the purposes of the Virginia statute as some of the statutory beneficiaries may ultimately be compensated for their losses through the distribution of the decedent's estate; and

    viii.    Application of the Connecticut statute will not undermine Virginia's interest in avoiding "burdensome liability for entities that do business within its borders" as both Virginia and Connecticut provide compensation for economic and non-economic injuries resulting from a victim's wrongful death, including the potential for punitive-type damages.

## FACTS

The decedent, John Zumbo, a resident of the State of Connecticut, died on July 7, 2006, after his car was struck by an oncoming tractor-trailer at the intersection of Westchester Avenue and Webb Avenue in Westchester County, New York. Exhibit "A" at ¶¶ 4, 27; Exhibit "B" at ¶ 27). The tractor-trailer was owned by defendant T&B Equipment Company, Inc. ("T&B") and operated by the individual defendant, Allan George Rothenberger ("Rothenberger"), both residents of the State of Virginia. Exhibit "A" at ¶ 6-7; Exhibit "B" at ¶7; Exhibit "C" at 5; Exhbit "E" at 10.[1] Plaintiff Providence Zumbo is a resident of the State of Connecticut and, as the duly qualified and acting administratrix of the estate of the decedent, commenced this action for negligence and wrongful death in Federal District Court in the Southern District of New York on July 11, 2007. Exhibit "D" at 4-5.

Defendant T&B is engaged in the business of providing temporary seating, skyboxes, tent floors and camera towers primarily to sporting events throughout the United States. Exhibit "E" at 12, 21. T&B maintains its corporate headquarters in Ashland, Virginia. Exhibit "E" at 10. The above-referenced equipment that T&B ships to other states is stored in Virginia as well as T&B's two other locations in Florida and Arizona. Exhibit "E" at 15.

T&B ships the majority of its equipment using common carriers hired by T&B. However, T&B maintains its own internal trucking unit consisting of four road tractors and eight trailer, as it is more cost efficient for T&B to use its own drivers to shift equipment from one job site to another site when they are in relatively close proximity to

---

[1] Defendant Rothenberger testified at deposition that he now resided in Phoenix, Arizona but indicated that he had no permanent address in Arizona and lived in his truck when in that state. Exhibit "C" at 28-29.

each other. Exhibit "E" at 13-14, 17. At the time of the accident in 2006, T&B employed four internal truck drivers for that very purpose. Exhibit "E" at 15-16. T&B earned revenues of approximately $25,000,000.00 in 2007 and paid its internal drivers $.37 per mile or $10.00 per hour during that same period. Exhibit "E" at 21

On the day of the accident, Defendant Rothenberger picked up a partial load of T&B bleacher materials at the Westchester Country Club and was scheduled to pick up additional materials at the Winged Foot Country Club in Mamaroneck, New York. Defendant Rothenberger proceeded toward Winged Foot via Westchester Avenue. As he was traveling eastbound on Westchester Avenue in the right lane he drove around a downhill curve before going under an overpass for Interstate 287 ("I-287"). While under the overpass, Defendant Rothenberger claims to have viewed the red light turn to green and he increased his speed traveling toward the intersection of Westchester Avenue and Webb Avenue where he truck struck John Zumbo's white Cadillac Escalade heading west on Webb Avenue on the driver's side. Exhibit "C" at 103-143. Zumbo's vehicle came to a rest more than 100 feet from the point of impact in the intersection. Zumbo remained alive in his car for several minutes bleeding from his nose and having difficulty breathing. Exhibit "C" at 184-87. John Zumbo eventually died at the scene suffering from blunt force trauma, fractures of the skull, clavicle and ribs, contusions of his lungs and aspiration of blood. Exhibit "F".

Mr. Michael Kelly, the CFO of T&B, asserted that he was in charge of Human Resource functions at T&B as well as safety issues. He admitted that he failed in his duty to ascertain the qualifications and competence of the employees the company hired to drive, an occupation that he conceded required skill or experience that could be

196952.1

4

hazardous to the safety of others. Kelly also admitted he was only a "little" familiar with the Federal Motor Carrier Safety Regulations ("FMCSR"), the statute governing the trucking industry. Exhibit "E" at 24.[2] Kelly admitted that he was not knowledgeable about and did not comply with the regulations and never instructed the company's drivers of the regulations. Exhibit "E" at 24-57; 49 C.F.R. §390.3(a),(e)(1)(2).[3]

Notwithstanding the duties set forth in the FMCSR, Kelly additionally admitted that T&B offered no safety classes for its drivers, had no safety director in place, had no formal safety plan in 2006, provided no safety materials to drivers in 2006, hired no outside safety consultants and did not offer its drivers any accident prevention materials or instruction. He also admitted that T&B's drivers were not screened for alcohol or drug use and that the company never obtained a copy of a driver history record for any of the drivers at T&B. Exhibit "E" at 24-57.

Most significantly, Kelly also admitted that he was not aware that Defendant Rothenberger had been convicted of driving while under the influence on two occasions prior to his employment with T&B, that he lied about one of those convictions on his license application to the Virginia Department of Motor Vehicles, that he had been convicted of driving an un-inspected vehicle while employed with T&B or that Defendant Rothenberger was driving with a suspended license the day he struck and killed John Zumbo. Exhibit "E" at 58-60, 70-71. See 49 C.F.R. §391.23.

Kelly admitted that nobody at T&B took any steps to verify whether Defendant Rothenberger committed any traffic offenses while driving a T&B vehicle and there was

---

[2] The purpose of the FMCSR is to promote safety of operations on the nation's highways for the general driving public. 49 C.F.R. §350.103; 383.1; 385.1; 391.1; 392.1.
[3] 49 C.F.R. § 390.11 mandates that "It shall be the duty of the motor carrier to require observance by its drivers of all duties of prohibitions imposed by the FMCSR.

no procedure in place to conduct such verification in 2006 as mandated by 49 C.F.R. §391.25. Exhibit "E" at 68-69. Kelly also admitted that T&B possessed no driver qualification file as required pursuant to 49 C.F.R.§391.51;392.25. Exhibit "E" at 120.

As a result of Rothenberger's striking John Zumbo's vehicle, Mr. Zumbo suffered excruciating pain and suffering and has lost all earning capacity and enjoyment of his young life.

## POINT I

### NEW YORK CHOICE OF LAW RULES APPLY

In diversity cases, federal courts apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941); Gilbert v. Seton Hall Univ., 332 F.3d 105, 109 (2d Cir. 2003). Here, the forum state is New York. As neither party has disputed venue, New York's choice-of-law rules should apply.

As an initial matter, in any case presenting a potential choice-of-law issue, the court must first determine "whether there is an actual conflict between the laws of the jurisdictions involved." Allstate Corp. v. Solarz, 81 N.Y.2d 219, 223 (1993); *see also*, 283 A.D.2d 109, 114 (1st Dept. 2001). As set forth more fully below, there is a clear and actual conflict between the laws of the states in question.

Once the Court determines that a conflict exists, in tort actions, consistent with New York law, it must apply an "interest analysis" test in order to determine which jurisdiction has the "greatest concern with the specific issue raised in the litigation." Globalnet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006) (*quoting* Schultz v. Boy Scouts of America, 65 N.Y.2d 189, 196, 491 N.Y.S.2d 90

[1985]). When applying interest analysis, the court must first determine what are the significant contacts and in which jurisdiction they are located. Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 521 (1994). Here, the significant contacts are the domiciles of the parties and the place of the tort. The decedent and the Plaintiff were/are domiciled in Connecticut (Plaintiff's domicile being the state in which the decedent's estate has been probated). The Defendants are both domiciled in Virginia and the site of the tort is New York.[4]

    a. <u>There is an actual conflict between the laws of Connecticut, Virginia and New York.</u>

        *1. Connecticut law compensates the decedent for injuries sustained from the accident, including death.*

Connecticut's wrongful death statute (C.G.S. § 52-55) is a "survival act" whereby the decedent's cause of action for personal injury "survives" his death and passes to his personal representative to be pursued as an asset of the estate. Connecticut permits recovery for, among other items, the destruction of earning capacity as well as non-economic losses such as the decedent's conscious pain and suffering and "the destruction of the decedent's capacity to carry on and enjoy life's activities in a way [he]would have done had [he] lived." Katsetos v. Nolan, 170 Conn. 637, 6578, 368 A.2d 172 (1976). Connecticut's wrongful death statute does not base damages upon losses occasioned by the decedent's family or relatives. McKirdy v. Cascio, 142 Conn. 80, 84, 111 A.2d 555 (1955)("The right of recovery for death is as for one of the consequences of the wrong inflicted upon the decedent and the damages are not based on any loss occasioned his

---

[4] Defendant Rothenberger is a domiciliary of Virginia. Defendant T&B maintains its principal place of business in Virginia. "[T]he domicile of a corporation for choice-of-law purposes is the state where it maintains its principal place of business." People by Vacco v. Alamo Rent a Car, 89 N.Y.2d 560, 563 (1997).

family."); Halstead v. U.S., 535 F.Supp. 782, 785 (D.C.Conn. 1982) *aff'd* 707 F.2d 671 (2d Cir. 1983)("In Connecticut, the measure of recovery in a wrongful death action is the value to the decedent of his life rather than the monetary loss to his next of kin or estate."). The cause of action for wrongful death is treated as "a continuance of that which the decedent could have asserted had he lived and to which death may be added as an element of damage." Sanderson v. Steve Snyder Enterprises, Inc., 196 Conn. 134, 150, 491 A.2d 389,397 (1985)(*citations omitted*). Thus, under Connecticut law, recovery for wrongful death is determined from the standpoint of the deceased and is measured by damages to him alone. Foran v. Carangelo, 153 Conn. 356, 360, 216 A.2d 638, 640-41 (1966)("[T]he statutory right of action belongs, in effect, to the decedent, and to the decedent alone, and damages are recoverable 'for the death ... as for one of the consequences of the wrong inflicted upon the decedent.'"[*citations omitted*]). Damages awarded for wrongful death under Connecticut law are distributed in accordance with C.G.S. § 45a-448 which provides that the award be distributed "in accordance with the last will and testament of the deceased" (or, if there is no will, in accordance with Connecticut's laws of intestacy) after payment of "the costs and expenses of suit, all expenses of last illness and funeral bills, the expenses of administration and claims against the estate and such amount for the support of the surviving spouse or family of the deceased during the settlement of the estate as the Court of Probate may allow."

> *2. Virginia law compensates the decedent's family for their losses arising from the decedent's death.*

Virginia's wrongful death statute (Va. Code. Ann. § 8.01-52) is a "death act" which, in effect, creates a new cause of action after the death of the injured party, for the

benefit of certain beneficiaries. In contrast to Connecticut, Virginia law seeks "to compensate the beneficiaries for the losses they suffer as a result of the decedent's death *and not to accumulate an estate for the decedent*." O'Connor v. Several Unknown Correctional Officers, 523 F.Supp. 1345,1348 (1981)(emphasis supplied). Virginia law permits "[c]ompensation for [the] reasonably expected loss of income of the decedent" which is sustained by the statutory beneficiaries, although financial dependency on the decedent is not a prerequisite to recovery. Marshall v. Goughnour, 221 Va. 265, 269 S.E.2d 801, 806 (Va. 1980). In addition, the Virginia statute permits recovery for non-pecuniary losses such as the sorrow and mental anguish of the beneficiaries. Va. Code. Ann. § 8.01-52(1). Va. Code. Ann. § 8.01-53 enumerates the class and beneficiaries thereof eligible to receive a distribution of wrongful death damages. The enumerated beneficiaries are, to varying degrees, all relatives of the deceased. For example, the first class of beneficiaries to receive death damages is the surviving spouse and the children of the deceased (or children of any deceased child of the deceased). If there is no surviving spouse and children or grandchildren, then a distribution may be made to the parents, brothers and sisters of the deceased and to any relative who is primarily dependent on the decedent for support or services and is also a member of the same household of the decedent. "Unlike a personal estate passing under the intestate law, which is a fund to be distributed equally among members of the same class, damages in wrongful death actions should be awarded independently and separately to the statutory beneficiaries according to their respective damages." Brooks v. Hannan, M.D., 53 Va.Cir. 465 (Va.Cir.Ct. 2000) *citing* Carroll v. Snead, 211 Va. 640, 644 (1971).

> *3. New York law compensates the decedent's family for their pecuniary losses and provides a separate cause of action for the decedent's pain and suffering.*

New York has both a "death act" through which damages are, by statute, limited to "pecuniary injuries" suffered by the distributees of decedent's estate including loss of support, voluntary assistance and possible inheritance (N.Y.Est. Powers & Trusts Law § 5-4.1 *et seq.* [McKinney 1984]) and a "survival act" which permits a separate cause of action for the decedent's pain and suffering experienced prior to his death. (N.Y.Est. Powers & Trusts Law § 11-3.2 [McKinney 1984]). New York courts have strictly construed the wrongful death statute to preclude non-pecuniary losses. Morgan Guar. Trust Co. of New York v. Garrett Corp., 625 F.Supp. 752, 760-61 (S.D.N.Y. 1986). Wrongful death damages are distributed in accordance with New York's intestacy laws, as modified by the wrongful death statute and in proportion to the pecuniary injuries suffered by each distributee. (N.Y.Est. Powers & Trusts Law § 5-4.4 [McKinney 1984]).

In light of the foregoing, there exist substantial differences between the laws of all three jurisdictions concerning Plaintiff's wrongful death claim. Accordingly, the Court must apply New York choice-of-law rules in order to determine which State's law shall be applied.

## POINT II

### NEW YORK CHOICE-OF-LAW RULES MANDATE APPLICATION OF CONNECTICUT'S WRONGFUL DEATH STATUTE

The court must also determine whether the purpose of the law in conflict is to regulate conduct or to allocate losses. Conduct-regulating rules are those which target standards of behavior to prevent injuries from occurring (*e.g.* rules of the road), whereas loss allocating rules, such as the wrongful death statutes in issue here, prohibit, assign or

limit liability after a tort occurs. Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994). Where the conflicting laws involve standards of conduct, the law of the place of the tort usually applies. Bodea v. Trans Nat Express, Inc., 286 A.D.2d 5, 9, 731 N.Y.S.2d 113, 116 (4th Dept. 2001); Schultz v. Boy Scouts of America, 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90 (1985). When the conflicting laws relate to allocating losses that result from admittedly tortious conduct as here, the New York courts apply the three rules set forth in the seminal case of Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64 (1972) to determine the applicable law. *See, also* Gilbert v. Seton Hall University, 332 F.3d 105, 109 (2d Cir. 2003).

The first Neumeier rule applies when the parties share a common domicile and provides that the law of the common domicile should control. Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 73, 595 N.Y.S.2d 919 (1993); Neumeier v. Kuehner, 31 N.Y.2d at 128. This is clearly not the case under the facts at bar.

The second Neumeier rule applies when the parties are domiciled in different states, the situs of the tort is in one of the domiciliary states and the "local law favors the respective domiciliary." Cooney v. Osgood Machinery, Inc., 81 N.Y.2d at 73; Neumeier v. Kuehner, 31 N.Y.2d at 128. The second rule adopts a "place of injury test" to resolve what has been characterized as a "true" conflict. Cooney v. Osgood Machinery, Inc., 81 N.Y.2d at 73; Neumeier v. Kuehner, 31 N.Y.2d at 128. Since none of the parties are domiciled in New York, where the accident occurred, the second Neumeier rule is likewise inapplicable.

### a. The Court should apply the third <u>Neumeier</u> rule

The third <u>Neumeier</u> rule, applicable here, is addressed to split-domicile cases where the parties are domiciled in diverse states and the allegedly tortious conduct occurred in a different state. The third rule directs a court to apply the law of the place of the accident unless it can "be shown that displacing [the law of the situs of the tort] will advance the relevant substantive law purposes [of one of the domiciliary jurisdictions], without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." <u>Gilbert</u>, 332 F.3d at 109 (*citing* <u>Neumeier</u>, 31 N.Y.2d at 128, 335 N.Y.S.2d at 70). *See, also*, <u>Pescatore v. Pan American World Airways, Inc.</u>, 97 F.3d 1, 13 (2d Cir. 1996). The intent of the third rule is to "further, on some 'sound basis' … the application of 'the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." <u>King v. Car Rentals, Inc.</u>, 29 A.D.3d 205, 213, 813 N.Y.S.2d 448, 455 (2d Dep't 2006) *citing* <u>Cooney v. Osgood Machinery, Inc.</u>, 81 N.Y.2d 66, 75, 612 N.Y.S.2d 919 (1993) and <u>Babcock v. Jackson</u>, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743 (1963).

### b. New York's interest in the enforcement of its wrongful death statute is minimal.

"[T]he New York Court of Appeals has made it reasonably clear that a state, whose only connection to the case is as the situs of the accident, has little interest in seeing its own loss allocation rules applied." <u>McDuffie v. Wilner</u>, 415 F.Supp.2d 412, 422-23 (S.D.N.Y. 2006); <u>Gilbert</u>, 332 F.3d at 109-110 (*citing* <u>Schultz</u>, 65 N.Y.2d at 201). Where "the conflict involves allocation of losses, the site of the tort is less important, and the parties' domiciles are more important." <u>Globalnet Financial.Com, Inc.</u>

v. Frank Crystal & Co., Inc., 449 F.3d at 384-85. *See, also* Pescatore v. Pan American World Airways, Inc., 97 F.3d at 13 ("Under New York's choice of law rules, when conflicting rules concern the allocation of loss rather than the regulation of conduct, the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy." [*quotations and citations omitted*]). New York, the locus of the accident, has no interest in the allocation of loss in this case since none of the parties are domiciled in the State. Moreover, none of the parties have a significant connection to New York beyond the fortuitous fact that the accident occurred there. *See, e.g.* Phelan v. Budget Rent-A-Car, 267 A.D.2d 654, 699 N.Y.S.2d 568 (3d Dep't 1999).[5]

    c. <u>Connecticut has the greatest interest in enforcing its wrongful death law.</u>

"When the extent of victim compensation is at issue, the *plaintiff's* domicile has an interest in applying its law because that forum is where the loss is felt and where the burden of the victim's uncompensated needs may fall." Sheldon v. PHH Corp., 135 F.3d 848, 853 (2d Cir. 1998)(emphasis in original). Connecticut, as the domicile of the decedent and his parents, is where the decedent's loss is most keenly felt and where the burden of the victims' uncompensated needs, if any, will ultimately fall. The Connecticut wrongful death statute preserves the rights of the decedent to recover for his injuries, including his death, and to direct the distribution of this recovery through his estate in accordance with the terms of his will or, in the absence of a will, the rules of intestacy. Connecticut, as the state most closely aligned with the disposition of the decedent's

---

[5] For this reason, the displacement of New York law does not create an appearance of favoritism toward local litigants nor does it raise concerns regarding forum shopping, Aboud, 29 F.Supp.2d at 183; Sheldon v. PHH Corp., 135 F.3d 848, 855(2d Cir. N.Y. 1998)("[S]uspicion of forum shopping is aroused 'when the plaintiff foregoes the economies afforded by bringing suit at home,' and when jurisdictional issues do no explain this litigation decision" *citing* Olmstead v. Anderson, 428 Mich. 1, 303 (6th Cir. 1990).

estate, has a significant interest in how its citizens will be compensated. Burgio v. McDonnell Douglas Inc., 747 F.Supp. 865, 872 (E.D.N.Y. 1990). Moreover, "Connecticut, through its legislature and courts, has indicated strong interest in fully compensating its domiciliaries when they file meritorious wrongful death ... actions." Saloomey v. Jeppesen & Co., 707 f.2d 671, 675 (2d Cir. 1983).

Virginia, on the other hand, can have no appreciable interest in securing recovery for the losses of the citizens of Connecticut. Sheldon v. PHH Corp., 135 F.3d at 854. Moreover, the application of the Virginia wrongful death statute, which is predicated on losses incurred by the statutory beneficiaries, would completely displace the right of the decedent's estate to recover for his losses, thereby undermining and frustrating the primary objectives of the Connecticut statute. On the other hand, application of the Connecticut statute will not wholly frustrate the purposes of the Virginia statute as some of the statutory beneficiaries may ultimately be compensated for their losses through the administration of the decedent's estate through probate or intestacy.

At best, Virginia's only interest in the application of its law is to avoid "burdensome liability for entities that do business within its borders." Sheldon v. PHH Corp., 135 F.3d at 854. This argument is not compelling as both Virginia and Connecticut provide compensation for economic and non-economic injuries resulting from a victim's wrongful death, including the potential for aggravated damages.

## CONCLUSION

For the foregoing reasons it is respectfully requested that Plaintiff's'motion *in limine* for a determination that Connecticut law is applicable to the issue of wrongful death damages be granted and for such other and further relief as to this Court may seem proper and just.

Dated: New York, New York
      August 15, 2008

Respectfully submitted,

By: _____
Joseph P. Tucker (JT2006)

KURZMAN KARELSEN & FRANK LLP
Attorneys for Plaintiff Providence Zumbo
230 Park Avenue – 23rd Fl.
New York, New York 10169
(212) 867 – 9500

On the brief: Marissa A. Winter